AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
November 30, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
для the

Southern District of Texas

| | |
|---|---|
| United States of America )<br>v. )<br> )<br>Timothy Wunder )<br>*Defendant* ) | Case No. 4:18-mj-1889 |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
**(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☒ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☒ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence
☒ Lack of financially responsible sureties
☒ Lack of significant community or family ties to this district

☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

Evidence Presented

On November 30, 2018, the Court held a hearing to determine whether Defendant Timothy Wunder should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f). The Defendant is charged in an Indictment out of the Northern District of Iowa, Case No. 18-cr-3026, in one count, with conspiracy to distribute a controlled substance, specifically 500 grams of a mixture containing methamphetamine ("meth"), which contained 50 grams or more of actual meth, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846, and 851. Assistant United States Attorney Sebastian Edwards appeared on behalf of the United States (the "Government"); Federal Public Defender attorney John MacVane appeared on behalf of Defendant.

Defendant's Background

Pretrial Services ("PTS") interviewed the Defendant and summarized his background information. Defendant is 43 years old. He recently moved to Houston after serving more than a decade in prison and moving around between Illinois, Michigan, and Iowa. At the time of his arrest, he lived in an apartment with his girlfriend of four years. Defendant's parents and two siblings live in Illinois. Defendant has a 19-year-old daughter who lives in Illinois. Defendant earned a high school equivalency certificate and obtained a certificate in welding while serving his federal sentence.

Defendant's father corroborated most of this information and indicated that he and his wife would be willing to allow the defendant to live with them if released on bond but would not co-sign on a bond because they were not willing to lose their house.

Defendant reported working odd jobs in Houston. He was previously employed at Liguria Foods in Iowa for two to three years in maintenance and performed some welding. He was apparently terminated from that job. He previously worked as a welder and was terminated from that job for fighting with a coworker. He reported that he was terminated from the prior job working in auto reconditioning.

Finally, the Defendant has a criminal history involving drug related crimes. Defendant was convicted of felony possession of a controlled substance (1995/1 year probation and $750 fine), as well as felony conspiracy to manufacture and distribute 50 grams or more of meth and possession of a firearm in furtherance of a drug trafficking crime (2002/120 months jail).

PTS recommended detention.

Evidence Regarding the Pending Indictment

At the hearing, the Government offered testimony of Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), concerning the investigation and Defendant's subsequent arrest. Because this indictment and investigation were out of Iowa, SA was familiar with the investigation of Defendant through conversations with the case agent in Iowa. SA did not participate in the investigation or arrest of Defendant. The Court finds SA's testimony to be credible. He testified to the following:

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

Defendant was previously convicted of conspiracy to distribute 50 grams or more of meth. He was sentenced to 120 months in prison. His terms of supervised release expired in 2014. SA testified that law enforcement in the Northern District of Iowa were conducting a new investigation regarding the trafficking of meth. The targets of that investigation led them to Defendant. Three co-conspirators all named Defendant as a source of meth: Joe Santian ("JS") was sentenced to 30 months in federal prison for his role in the conspiracy involving trafficking meth; Robert Kramer ("RK") was sentenced to 25 years in state jail for the conspiracy; and Lisa Stock ("LS") was arrested in February and is awaiting sentencing. In addition, a former co-worker said that he visited Defendant's home and saw a gallon bag each of meth and cocaine.

1. JS was interviewed following his arrest in January 218. He stated that initially he supplied meth to Defendant, selling him one-quarter pound of meth. He offered to take Defendant to meet his source of supply in California. JS, his wife, Defendant, and his girl friend travelled to California for Defendant to meet the source. At that time, Defendant purchased five pounds of meth from the California source and JS purchase one pound. After that, Defendant began to purchase meth from the California source and Defendant supplied meth to JS. JS stated that he made multiple purchases of meth from Defendant. Defendant also told JS that he was supplying meth to his coworkers at Liguria Foods. In December 2017, JS's house was searched. He said that the meth found was purchased from Defendant over time in 2 – 4 ounce increments. One pound of meth, 9 guns and $33,000.00 were seized during that search.

2. RK was a co-worker of Defendant at Liguria Foods. He said that at first he sold drugs to the Defendant. But after Defendant made the trip to California, where he met a source of supply, RK began buying drugs from Defendant because he was able to buy from the source in larger quantities and at a cheaper rate.

3. LS was RK's girlfriend. She corroborated the drug deals that RK discussed with law enforcement.

4. Defendant's supervisor at Liguria Foods, Mike Callingsrub ("MC") went to Defendant's house in January 2018 because he was not showing up to work. When he went into Defendant's house, he saw a gallon size bag containing about one pound of cocaine and a gallon size bag containing about one pound of meth. A co-worker had told MC that he was purchasing drugs from Defendant. MC also said that Defendant said that he had a load of drugs he needed to take to Chicago.

5. The government introduced into evidence Government Exhibit 1, that contained a series of prints of Facebook messages between Defendant and others. In an exchange between Defendant and Robert Nap ("RN"), an associate of Defendant who also used meth, the messages indicated in street talk that someone had stolen $1300 from Defendant; Defendant thought that he would have been incarcerated by now; he had better connections than he ever had; he now lived in Texas and did not want anyone to know where he was; that someone named Jameson had tipped off the police; Defendant thought the police were looking for him, but instead his "guy" was arrested; and he was going to tell the "Mexican boss" that Jameson was the reason his guy was arrested (SA testified that there was a Mexican source of supply in the meth investigation.); he had an investor who would provide his with money or drugs to do whatever he wanted to do; and he discussed law enforcement getting too close for him.

6. LS was arrested on February 6, 2018 in Iowa on the meth drug trafficking charges. Two days later, Defendant and his girlfriend packed up their belongings, picked up $4,000 that RK owed him, and they left town for Texas.

Defendant proffered that Defendant's girlfriend knew him since high school, and said he moved to Houston because he wanted to work as a welder. Defendant received unemployment benefits until October. He was not dangerous and could live with her. Defendant's aunt and uncle did not think he was a flight risk or dangerous and that he could live with them. Defendant's daughter said that she was close to him and he was not a danger and would show up in court. His parents said that he was not violent or dangerous. They changed their minds and were not willing to be the third-party custodian because they had a trip planned for January and would not be home to monitor him. Defendant was willing to go to inpatient treatment and would agree to home confinement.

Order

This is a presumption case. The Grand Jury found probable cause to indict Defendant on the charges.

The Government established by clear and convincing evidence that the Defendant is a danger to the community because he was involved in the sale of a significant amount of meth in Iowa. Three co-conspirators identified him as a source of supply for distribution quantities of meth. His former supervisor said that he was supplying drugs to co-workers and that the supervisor had seen large quantities of narcotics in his house. At least two people confirmed that Defendant had met a California source of supply and began selling drugs after that meeting. He left town immediately after one of his co-conspirators was arrested and fled to Houston to hide. He did not want his former associates to know where he was. The Facebook messages indicate that Defendant was aware that others had been arrested, someone was cooperating, and he feared he was being watched. The evidence overwhelming shows that Defendant is someone who is in the drug trafficking arena.

The Government also established that Defendant is a flight risk because he has few ties to the Houston community. Defendant has been in Houston for several months but had not obtained employment as a welder as Defendant proffered was the reason for his move. He has no regular employment, owns no property, although he has his girlfriend and some family here. The Defendant is facing significant prison time if he is convicted and he already fled Iowa for Texas to escape detection. However, the Defendant established that, if he were free on bond, he could live with his Aunt and Uncle, he would agree to home incarceration, and he had successfully completed supervised release in the past. The Defendant's parent's unwillingness to act as surety because they feared they would lose their home indicates that his parents would not gamble on his compliance with the bond conditions.

The Defendant failed to rebut the presumption that he is a danger to the community such that the court could safely release him on bond pending the trial of his case. The Defendant presented some evidence to rebut the presumption that he is a flight risk, but after considering the presumption, and all of the evidence as discussed above, the Court determines that detention is warranted.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 11/30/2018

*Dena Palermo*
United States Magistrate Judge